UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEANNA LEE GROEZINGER,
Plaintiff,
v.
CAROLYN W. COLVIN, Acting Commissioner of Social Security,
Defendant.

Case No. EDCV 13-2105 JC

MEMORANDUM OPINION

## I. SUMMARY

On November 22, 2013, plaintiff Deanna Lee Groezinger ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; November 27, 2013 Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 6, 2010, plaintiff filed an application for Supplemental Security Income. (Administrative Record ("AR") 132). Plaintiff asserted that she became disabled on April 7, 2009, due to left hand carpal tunnel syndrome with corrective surgery, emphysema, high iron count, scoliosis, osteoporosis, and back pain. (AR 156). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 10, 2012. (AR 27-64).

On August 8, 2012, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 14-21). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: coronary artery disease, status post coronary angioplasty and stent placement, peripheral vascular disease, carpal tunnel syndrome, status post bilateral carpal tunnel release, status post trigger finger release, left knee strain, chronic obstructive pulmonary disease, emphysema, asthma, and osteoporosis (AR 16); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 17); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 416.967(b)) with additional limitations[2] (AR 18);

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

[2]The ALJ determined that plaintiff (i) could occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; (ii) could occasionally kneel, crouch, and crawl;

(continued...)

(4) plaintiff had no past relevant work (AR 20); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically hostess, school bus monitor, and garment sorter (AR 20-21); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 19).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

///

---

[2](...continued)
(iii) could frequently balance and stoop; (iv) could use her right upper extremity for frequent handling and fingering; and (v) needed to avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation. (AR 18).

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

(9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Medical Evidence

Plaintiff essentially claims that the ALJ failed properly to consider the medical evidence by (1) mischaracterizing the medical records relevant to plaintiff's cardiac and respiratory impairments; and (2) improperly disregarding the state agency orthopedic examiner's opinion that plaintiff was limited to standing and walking only two hours out of an eight hour day. (Plaintiff's Motion at 3-10). As discussed below, plaintiff misinterprets the ALJ's decision and the medical evidence in several respects. When viewed in the proper context, the ALJ's evaluation of the medical evidence is supported by substantial evidence and free of material error. Accordingly, a reversal or remand is not warranted on any of the foregoing grounds.

#### 1. Cardiac Impairments

As the ALJ noted, plaintiff suffered a heart attack in April 2009, but by November 2009 plaintiff reported having "only twinges" of pain in her chest and said she was "[a]ble to walk 2 1/2 miles per night without difficult[y]." (AR 17,

1193). Plaintiff testified that her condition subsequently became "progressively worse." (AR 47). The ALJ found plaintiff's testimony not entirely credible, however, explaining:

> There is not much in the medical evidence of record to indicate why [plaintiff's] condition declined to the extent that [plaintiff] allege[d]. Especially since the cardiac catherization [sic] and stress testing [of plaintiff] ruled [out] any serious cardiac abnormalities and showed that the treatment of [plaintiff's] chest pain with nitroglycerine was being done on a prophylactic basis.

(AR 19). Plaintiff essentially contends that the ALJ's findings mischaracterized the evidence of plaintiff's cardiac condition. (Plaintiff's Motion at 3-5); see, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support an adverse credibility determination). The Court disagrees.

For example, plaintiff claims "the ALJ is suggesting that Plaintiff's cardiac condition is essentially normal and under control with medications only being provided on a prophylactic basis." (Plaintiff's Motion at 3). Plaintiff misreads the ALJ's decision, however, which actually states that cardiac testing ruled out any "serious cardiac abnormalities" (not that plaintiff's cardiac condition was entirely "normal"), and states that plaintiff was prescribed nitroglycerine (not multiple "medication*s*" as plaintiff suggests). Plaintiff also asserts that the ALJ incorrectly stated that plaintiff's nitroglycerin was prescribed on a "prophylactic basis." (Plaintiff's Motion at 4). Nonetheless, as the ALJ suggested, the record does reflect that around the time of plaintiff's cardiac testing plaintiff was prescribed *prophylactic* nitroglycerin. (AR 882-83 [February 17, 2011 cardiac stress test], 814-15 [March 4, 2011 Left Heart catheterization], 807-08 [March 8, 2011 progress note indicating prescription for "[t]rial of extended release nitrogylcerine" after plaintiff's stress test].

Accordingly, plaintiff is not entitled to a reversal or remand based on the ALJ's asserted mischaracterization of the evidence regarding plaintiff's cardiac condition.

**2. Respiratory Impairments**

Plaintiff contends that a reversal or remand is warranted because the ALJ grossly mischaracterized the medical evidence regarding plaintiff's respiratory impairments, and that such impairments are significantly more limiting than the ALJ's residual functional capacity assessment suggests. (Plaintiff's Motion at 5-8). The Court disagrees.

Here, substantial evidence supported the ALJ's determination that despite her severe respiratory impairments (*i.e.*, chronic obstructive pulmonary disease, emphysema, and asthma), plaintiff retained the residual functional capacity to do a limited range of light work with respiratory precautions. For example, as the ALJ found, the medical evidence reflects that plaintiff's respiratory condition was, apart from "rare exacerbations," generally noted as "stable and controlled." (AR 18) (citing Exhibits 12F at 20-21, 32-33, 35-36, 49, 88-96 [AR 824-25 (plaintiff complained of shortness of breath and wheezing, but on examination there were "no wheezes . . . no rales," and persistent asthma was assessed as "controlled"), 836-37 (same), 839-40 (same), 853 (plaintiff responded "no" to all asthma control questions), 892-900 (sepsis episode)]; 22F at 9-11, 21, 25-26 [AR 1229-31 (no symptoms of "shortness of breath and wheezing," on examination "no wheezes . . . no rales," asthma persistent but "controlled"), 1241 ("no respiratory distress"), 1245-46 (asthma "stable")]; 23F at 12-13, 18-19 [AR 1269-70, 1275-76 (bronchitis episodes)]). The opinions of the state agency reviewing physicians – both of whom found no functional limitations beyond those already accounted for in the ALJ's residual functional capacity assessment (AR 1044-54, 1166-68) – constituted substantial evidence supporting the ALJ's decision since they are supported by the medical record as a whole and are consistent with it. <u>See</u>

Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"). Any conflict in the properly supported medical opinion evidence was the sole province of the ALJ to resolve. Andrews, 53 F.3d at 1041.

Plaintiff asserts that the ALJ inaccurately stated that the record reflected "no abnormal pulmonary findings [for plaintiff] from 2010 through 2012," when the medical evidence showed otherwise. (Plaintiff's Motion at 6, 8) (emphasis added). Plaintiff's summary, however, is itself inaccurate as it relies on only one portion of the ALJ's actual quote (without referencing the qualifications the ALJ placed thereon). Specifically, plaintiff quotes the ALJ as stating: "There were no abnormal pulmonary examination findings in 2010[,] 2011, and 2012 and [plaintiff's] asthma was generally described as controlled." (Plaintiff's Motion at 5) (quoting AR 18). The ALJ's complete statement, is as follows: "[e]xcept for an episode of sepsis in 2010 secondary to consumption of contaminated food, and two episodes of bronchitis in December 2011 and February 2012, there were no abnormal pulmonary examination findings in 2010[,] 2011, and 2012 and [plaintiff's] asthma was generally described as controlled." (AR 18). In addition, plaintiff's subjective complaints noted in medical records do not, as plaintiff suggests (Plaintiff's Motion at 6-8), undermine the accuracy of the ALJ's statement which addressed "examination findings" (AR 18), not plaintiff's subjective complaints. The other record medical evidence plaintiff points to does not reflect that the ALJ made "a gross misstatement of the facts" regarding plaintiff's respiratory impairments. For example, plaintiff asserts that in a February 11, 2011 progress note "plaintiff was noted to have shortness of breath and wheezing on examination." (Plaintiff's Motion at 8) (citing AR 756). The actual medical record, however, reflects that plaintiff complained of symptoms including "shortness of breath and wheezing," but the physical examination

documented "no wheezes" and "no rales." (AR 756). Plaintiff also notes that an October 31, 2011 progress note documented "wheez[ing]." (Plaintiff's Motion at 8) (citing AR 1226). The same note, however, also reflects that plaintiff had "[n]o respiratory distress . . . no rales . . . [and] no tenderness." (AR 1226). Plaintiff also states that on December 28, 2011, among other things, "[plaintiff] was noted to have difficulty breathing [and] shortness of breath." (Plaintiff's Motion at 8) (citing AR 1268). The actual December 28, 2011 progress note, however, reflects that although plaintiff complained of "difficulty with breathing" and "shortness of breath," an examination revealed only "wheezes" and "rhonchi" with "no respiratory distress" and "normal" effort. (AR 1268). In addition, evidence that plaintiff was "prescribed steroids and nebulizer medications as well as numerous other inhalants" (Plaintiff's Motion at 7) does not undermine the ALJ's finding that plaintiff's asthma was "generally [] controlled" by plaintiff's medication. Nor is such finding undermined by the single chest x-ray plaintiff identifies (Plaintiff's Motion at 7) (citing AR 338), which does not reflect that plaintiff had any abnormality that was not controlled by plaintiff's medication. To the extent plaintiff contends that the foregoing evidence establishes that she would be "incapable of sustaining any full time competitive employment" (Plaintiff's Motion at 8), the Court will not second guess the ALJ's determination to the contrary, even if such evidence could support inferences more favorable to plaintiff. Robbins, 466 F.3d at 882 (citation omitted).

To the extent plaintiff argues that the ALJ "gross[ly]" misstated the facts of plaintiff's respiratory impairments because "[p]laintiff was prescribed oxygen . . . in July of 2012" (Plaintiff's Motion at 8) (citing AR 1310), plaintiff's argument is meritless. In short, since plaintiff apparently submitted the cited medical evidence to the Appeals Council only after the ALJ issued his decision (compare AR 5 with AR 21), the ALJ could not have made a "gross misstatement of the facts" based on such evidence.

Accordingly, plaintiff is not entitled to a reversal or remand based on the ALJ's asserted mischaracterization of the medical evidence regarding plaintiff's respiratory impairments or the ALJ's related assessment of plaintiff's residual functional capacity.

**3. Dr. Bunsri T. Sophon**

**a. Pertinent Facts**

On December 17, 2010, plaintiff was treated for an injury to her leg. (AR 630). At the time, an x-ray showed "no fracture" in plaintiff's left knee, plaintiff's treating physician diagnosed her with only a "contusion," and plaintiff was treated with only a knee sleeve, ice, rest, and Motrin. (AR 630). As the ALJ noted, and plaintiff conceded at the hearing, plaintiff did not seek further medical treatment for her knee after the initial treatment. (AR 17, 19, 44).

On December 28, 2010, Dr. Bunsri T. Sophon, a state agency examining orthopaedic surgeon, conducted a Complete Orthopedic Evaluation of plaintiff which included a physical examination. (AR 642-47). During the orthopedic evaluation, plaintiff told Dr. Sophon that she "broke her left knee." (AR 643). Dr. Sophon did not consider the x-ray of plaintiff's knee from plaintiff's treating physician, and plaintiff did not permit Dr. Sophon to examine her left knee. (AR 645-46). In addition, on examination plaintiff's spine was found to be essentially normal with full range of motion and negative straight leg raising tests. (AR 644). Apart from her left knee (which plaintiff declined to move during the examination), plaintiff had full range of motion in her lower extremities. (AR 645-46). Dr. Sophon diagnosed plaintiff with lumbar strain, residual of right carpal tunnel syndrome, and fracture left knee, and opined, in part, that plaintiff would be "restricted to standing and walking [two] hours out of an [eight]-hour day" ("Dr. Sophon's Opinion") (Plaintiff's Motion at 9-10) (citing AR 647).

On February 4, 2011, plaintiff reported to Social Security Administration staff that her "knee [was] OK," that she no longer had pain, cracking, swelling or

instability in her knee, and that her knee was "no longer an issue." (AR 1052, 1053).

**b. Analysis**

Plaintiff contends that the ALJ improperly rejected Dr. Sophon's Opinion. A remand or reversal on this basis is not warranted.

First, the ALJ properly rejected Dr. Sophon's Opinion because it was not supported by the examining physician's evaluation of plaintiff or the record as a whole. See Mendoza v. Astrue, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (Opinion of examining physician may be rejected where it is "unsupported by the record as a whole") (citing Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2003)); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). For example, as noted, plaintiff was treated for only a contusion in her left knee. (AR 630). During the orthopedic evaluation only eleven days after her injury, however, plaintiff told Dr. Sophon that she "broke her left knee." (AR 643) (emphasis added). Again, Dr. Sophon did not consider the x-ray of plaintiff's knee, nor did plaintiff permit Dr. Sophon to examine her left knee. (AR 645-46). Thus, as the ALJ noted, it appears that Dr. Sophon's Opinion was based entirely on plaintiff's subjective (and incorrect) description of the severity of her knee impairment (AR 19), which is insufficient to demonstrate a disabling impairment. Cf. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) ("[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone.") (citation omitted);

SSR 96-4p at *1-2 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.").

To the extent plaintiff argues that the ALJ was obligated to recontact Dr. Sophon for clarification of his opinion, such an argument lacks merit. An ALJ has an affirmative duty to assist the claimant in developing the record at every step of the sequential evaluation process. Bustamante, 262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty fully and fairly to develop record and to assure that claimant's interests are considered). The ALJ's duty is triggered only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). Here, the ALJ's duty to develop the record further was not triggered. Plaintiff does not argue that the evidence of plaintiff's impairments is ambiguous, or that the record as a whole was inadequate to allow for proper evaluation of the evidence. To the contrary, the record contains medical records from plaintiff's treating physician and reports from state agency reviewing physicians on which the ALJ properly relied to assess plaintiff's residual functional capacity and determine disability. (AR 17, 19) (citing Exhibits 7F at 58 [AR 630]; 15F [AR 1044-49], 16F [AR 1050-54];19F [AR 1166-68]).

Second, even so, the ALJ was not required to give any weight to Dr. Sophon's Opinion since it did not reflect a physical impairment that would satisfy the durational requirement – *i.e.*, a disabling impairment expected to last for *at least* twelve months. See 42 U.S.C. § 423(d)(1)(A); Burch, 400 F.3d at 679; see also Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an explanation only when he rejects "significant probative evidence.")

(citation omitted). Specifically, as the ALJ noted and as discussed above, it appears that Dr. Sophon's Opinion that plaintiff was significantly limited in her ability to walk was based solely on plaintiff's purported knee impairment. (AR 19, 645-46). Since plaintiff's knee impairment appears to have lasted, at most, from December 17, 2010, to approximately February 4, 2011 (AR 630, 1052, 1053), the ALJ reasonably concluded that plaintiff had not established an impairment which lasted twelve months or more. (AR 17).

Finally, the ALJ properly rejected Dr. Sophon's Opinion in favor of the conflicting opinions of the reviewing physicians who, again, found no functional limitations beyond those already accounted for in the ALJ's residual functional capacity assessment. (AR 19) (citing Exhibits 15F [AR 1044-49], 16F [AR 1050-54];19F [AR 1166-68]). The opinions of the state agency reviewing physicians constitute substantial evidence supporting the ALJ's decision since they are supported by the medical record as a whole and are consistent with it. See Andrews, 53 F.3d at 1041.

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

**B. The ALJ Properly Evaluated Plaintiff's Credibility**

**1. Pertinent Law**

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

///

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find a claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the claimant's statements and testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling 96-7p. Although an ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his or her credibility assessment. Burch, 400 F.3d at 681.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger, 464 F.3d at 972. Accordingly, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to second guess it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

///

///

**2. Analysis**

Plaintiff contends that a reversal or remand is required because the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 10-14). The Court disagrees.

First, the ALJ properly discredited plaintiff's subjective complaints due to internal conflicts within plaintiff's own statements and testimony. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); see also Fair, 885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain testimony based on contradictions in plaintiff's testimony). For example, as the ALJ noted, although plaintiff testified at the hearing that she had filed an application for Social Security benefits because "[her] cardiologist and [] family [] doctor told [her] not to work" (AR 48), plaintiff points to no such note in any of her treatment records. (AR 19, 48). Also, on December 28, 2010, plaintiff told the consultative orthopedic examining physician that eleven days earlier she "fell and broke her left knee" (AR 643), but on the date of the injury (*i.e.*, December 17, 2010), an x-ray of plaintiff's knee showed "no fracture," and plaintiff's treating physician diagnosed her with only a "contusion" (AR 630). The ALJ properly concluded that such inconsistencies impacted the credibility of plaintiff's testimony. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.").

Second, an ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of subjective complaints. See Bunnell, 947 F.2d at 346 (In assessing credibility, the ALJ may properly rely on plaintiff's unexplained failure to request treatment

consistent with the alleged severity of her symptoms.); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (In assessing credibility, ALJ properly considered doctor's failure to prescribe and claimant's failure to request any serious medical treatment for supposedly excruciating pain); see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack of treatment and reliance upon nonprescription pain medication "clear and convincing reasons for partially rejecting [claimant's] pain testimony"); Fair, 885 F.2d at 604 (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). Here, as noted above, despite plaintiff's complaint of a knee injury, plaintiff did not seek further medical attention for her knee after her initial treatment in 2010 (even though plaintiff admitted that she had not lost her medical insurance coverage until November of 2011). (AR 17, 19, 42, 44). In fact, at the hearing the ALJ asked if plaintiff's knee pain "hurt [plaintiff] to the extent [she] needed to go to the doctor or wanted to go to the doctor," and plaintiff said "[n]o." (AR 44). While an ALJ may not reject symptom testimony where a claimant has a "good reason" for not seeking treatment (e.g., the claimant is uninsured/unable to afford medical care), see Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted), plaintiff has failed to present such a sufficient reason.

Finally, the ALJ properly discredited plaintiff's subjective symptom testimony due, in part, to the absence of supporting objective medical evidence. Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). For example, contrary to plaintiff's complaint of persistently disabling respiratory symptoms, as the ALJ noted, the medical evidence reflects that, except for "rare exacerbations," plaintiff's respiratory impairments were essentially

"considered stable and controlled" with medication. (AR 19; see AR 824-25, 836-37, 839-40, 853, 892-900, 1229-31, 1241, 1245-46, 1269-70, 1275-76); see, e.g., Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citations omitted). As the ALJ also noted, recent testing showed plaintiff with generally "normal heart function." (AR 19, 815, 822-25, 882-84). In addition, contrary to plaintiff's testimony regarding significant limitations in her hands, as the ALJ noted, medical records reflect that plaintiff had a "good response to [carpal tunnel and trigger finger] surgeries," and the records do not document ongoing complaints involving plaintiff's hands (and plaintiff points to none). (AR 18, 19) (citing Exhibits 3F at 10, 30 [AR 315, 335]; 4F at 54, 59 [AR 398, 403]); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (evidence that claimant "responded favorably to conservative treatment" undermines plaintiff's reports of disabling pain). Although plaintiff argues that the foregoing medical evidence actually supports her subjective complaints, the Court will not second guess the ALJ's reasonable interpretation to the contrary, even if such evidence could give rise to inferences more favorable to plaintiff. See Robbins, 466 F.3d at 882 (citation omitted).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 6, 2014

/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE